**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GEORGE MELVIN JENKINS<br>55545 Grandview Avenue<br>South Bend, IN 46628<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN McHUGH, in his official capacity as<br>United States Secretary of the Army,<br><br>          and<br><br><br>UNITED STATES ARMY BOARD FOR<br>THE CORRECTION OF MILITARY<br>RECORDS,<br><br>          and<br><br>UNITED STATES OF AMERICA,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **NO.**<br><br>**COMPLAINT** |

## I.    INTRODUCTION

1.    This action is brought by George Jenkins ("Jenkins"), by and through his attorneys, against United States Secretary of the Army John McHugh ("McHugh"), the United States Army Board for the Correction of Military Records ("ABCMR"), and the United States of America ("United States") (collectively, "Defendants").

2.    This dispute arises out of the Defendants' denial of Jenkins' petition for a discharge status upgrade, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

3.    Defendants violated the APA when the ABCMR denied Jenkins' petition for a discharge status upgrade.  Specifically, by denying Jenkins' petition for discharge status upgrade, Defendants violated the APA in the following four independent ways:

      a.    As a matter of law, the ABCMR's decision is erroneous in denying Jenkins' discharge status upgrade because the discharge of Jenkins from the Army with an other than honorable administrative discharge pursuant to "Chapter 10" (Army Regulation 635-200), which authorizes discharges "in lieu of trial by court-martial," was "not in accordance with law" and a legal nullity because at the time no court-martial was pending against Jenkins since the charges had been set aside by military appellate courts, no court-martial for a retrial had been convened, no charges had been referred, and a retrial would have been barred as a matter of law for failure to meet the 120-day speedy trial requirement following remand.

      b.    As a matter of law, the ABCMR's decision is erroneous in denying Jenkins' discharge status upgrade because after the charges against Jenkins were set

aside on appeal, he was assigned defense counsel – who was located hundreds of miles from Jenkins and whom Jenkins never met – who failed to give Jenkins the legal advice expressly required by Chapter 10, and instead gave him legal advice that was inaccurate, incomplete, and misleading, which advice was "not in accordance with law" and effectively cost Jenkins his active duty status and his benefits as a veteran;

c.  The decision of the ABCMR denying Jenkins' petition was itself erroneous as a matter of law and is arbitrary and capricious because (1) the ABCMR based its decision on facts the Board surmised but that the record does not support, (2) the Board's analysis of the speedy trial requirements set forth by the U.S. Court of Military Appeals and as stated in the Manual For Courts-Martial was legally erroneous, and (3) the Board's decision failed to address one of Jenkins' dispositive legal arguments, namely, that his appointed counsel violated Army regulations by failing to provide legal advice that Army regulations expressly require that he provide.

d.  The ABCMR's refusal to grant Jenkins' petition is "arbitrary, capricious, and an abuse of discretion" in light of the overall facts of this case, including the following:

   i.  that the conviction of Jenkins was based solely on the uncorroborated testimony of two witnesses,

   ii. that the prosecution failed to disclose a prior felony conviction of one of the witnesses,

iii.   that after trial one of the two witnesses recanted his testimony in a letter to prosecutors and reviewing authorities,

iv.   that every reviewing authority expressed doubts about the credibility of the witnesses and the guilt of Jenkins,

v.   that over the course of five years of appellate review, both the Army Court of Military Review and the U.S. Court of Military Appeals set aside both of the charges against Jenkins,

vi.   that the convening authority to whom the case was remanded ultimately dismissed all of the charges against Jenkins,

vii.   that Jenkins nonetheless served a full prison sentence at hard labor for those charges,

viii.   that Jenkins' application for an administrative discharge "in lieu of court-martial" was prompted by advice from assigned legal counsel that was legally erroneous, that violated Army regulations, and without which Jenkins would have been fully restored to active duty with no loss of pay or benefits,

ix.   that the administrative discharge "in lieu of court-martial" by which Jenkins was discharged was issued in violation of Army regulations because the regulatory precondition of being issued "in lieu of court-martial" did not exist and could not lawfully exist, and

x.   that the order of the convening authority ultimately dismissing the case stated that it restored Jenkins' rights did not do so and had no legal effect.

4.      As a result of his improperly issued Chapter 10 discharge, Jenkins has been ineligible for Veterans Affairs benefits, which he needs for adequate care of medical ailments.

**II.      JURISDICTION**

5.      Jurisdiction is founded upon 28 U.S.C. § 1331, 28 U.S.C. § 1346, and 5 U.S.C. § 702.

**III.      VENUE**

6.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) and (e).

**IV.      STANDARD OF REVIEW**

7.      The standard of review under the APA for the first three of Jenkins' four claims is de novo review of three issues of law.  The APA, 5 U.S.C. § 706, provides that "To the extent necessary…the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."

8.      The standard of review for the fourth claim under the APA is whether the agency's action is "arbitrary and capricious," taking into account the level of deference to which agency action is entitled.  The APA provides that it is reversible error for an agency to take action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

**V.      PARTIES**

9.      Plaintiff George M. Jenkins is a United States citizen and United States Army veteran.  Prior to completing high school, Jenkins enlisted in the Regular Army on September 30, 1978, following his two older brothers in military service careers.  On January 23, 1979, at age 17, Jenkins began active duty.

10.     Jenkins' Chapter 10 discharge under other than honorable conditions has inhibited his ability to find steady employment outside the Army.

11.     Now 53 years old, Jenkins contends with multiple debilitating health issues, including decreased pulmonary function, chronic kidney problems, diabetes, cataracts, and high blood pressure.

12.     Because of his discharge status, Jenkins is ineligible for Veterans Affairs benefits, and thus has been unable to obtain adequate medical care to treat his pressing medical conditions.

13.     Consequently, Jenkins' health has continued to decline, resulting in a recent hospitalization for congestive heart failure.  These health issues make working, and even performing basic daily functions, difficult.

14.     Defendant McHugh, as Secretary of the Army, is ultimately responsible for, inter alia, the actions of the ABCMR.  McHugh's statutory authority includes the authority to correct an error in or remove an injustice from any Army records, and the responsibility to establish and implement procedures for doing so.

15.     Defendant ABCMR is the highest level of administrative review within the Department of the Army.  Its primary mission is to correct errors in and remove injustices from Army military records.

16.     Defendant the United States acts by and through its departments, agencies, and officials.

## VI.     FACTS

### A.     The Charges Against Jenkins

17.     After Specialist Four Jenkins had been in the military for over three years, he was charged under the Uniform Code of Military Justice with larceny and wrongful disposition of an M-3 submachine gun, and on November 19, 1982, he was convicted on both counts by a general court-martial convened at Fort Hood, Texas.

18.     The case against Jenkins was based solely on the testimony of two prosecution witnesses.  The supervisor of the government's first witness, PFC Diane M. Gondek, testified that Gondek was not a truthful person and that the supervisor would not believe Gondek even under oath.

19.     The other witness for the prosecution, Orlando Crespo, a civilian tradesman who sold snack foods to concessions on base and who had been found in possession of the M-3 submachine gun at issue, had previously been in the military, where he had been convicted for violations of Article 92 of the Uniform Code of Military Justice for failure to obey an order or regulation and for forging his commanding officer's signature.

20.     The prosecution failed to disclose Crespo's prior conviction despite its legal duty to do so.

21.     The testimony of both prosecution witnesses was contradicted at trial by other witnesses who had seen the same events but testified that they did not see what the two prosecution witnesses alleged.

22.     After trial, Crespo, the government's key witness, sent a letter to the military judge and the convening authority recanting and apologizing for having given false testimony during Jenkins' court-martial proceedings.

23.     In post-trial proceedings, Jenkins' company commander stated that there was a "strong possibility" that Jenkins was innocent, and recommended disapproval of the findings and

clemency as to the sentence.

24.     In reviewing the case, both local and appellate reviewing authorities expressly commented on the questionable credibility of the government's two witnesses.

25.     On appeal, the United States Army Court of Military Review overturned Jenkins' conviction for wrongful disposition.  The Court held that Jenkins' conviction for wrongful disposition was based solely on Crespo's testimony, that the government had failed to disclose Crespo's criminal record to defense counsel before trial, and that it was "entirely reasonable to conclude that if the members [of the court martial] had been presented with additional information attacking Crespo's credibility they might have returned a finding of not guilty to that offense."

26.     Because Crespo's testimony also related to the larceny charge, Jenkins petitioned the United States Court of Military Appeals to overturn the larceny charge, as well.

27.     Citing additional Supreme Court and U.S. Court of Military Appeals precedent requiring prosecutors to disclose certain relevant information requested by the defense, the Court of Military Appeals set aside the Court of Military Review decision and remanded the case for further review by that court.

28.     The Court of Military Review then set aside all findings of guilt and Jenkins' sentence and returned the case to the Judge Advocate General of the Army.

29.     On August 13, 1987, after nearly five years of appellate review, the case was remanded to the Commander of Fort Leavenworth, to whose jurisdiction Jenkins had been assigned upon sentencing.

30.     The August 13, 1987 remand memorandum from the Judge Advocate General to the Commander of Fort Leavenworth expressly noted that if a rehearing were ordered, it would

have to conform to speedy trial requirements as articulated by the U.S. Army Court of Military Review and, specifically, that any rehearing of charges against Jenkins, who had by that time completed serving his sentence and was no longer confined, would have to be ordered within 120 days, or by December 11, 1987.

31.     On November 30, 1987, less than two weeks before the charges against Jenkins would be legally barred, and despite the fact that no rehearing had yet been ordered, Jenkins' Army-assigned defense counsel strongly recommended to Jenkins that he apply for a Chapter 10 discharge.

32.     Assigned counsel failed to advise Jenkins, or discuss with him, the factors that Army regulations require be discussed prior to an application for a Chapter 10 administrative discharge.

33.     On January 20, 1988, more than one month after a rehearing on these charges would have been barred as a matter of law, Jenkins' assigned defense counsel submitted Jenkins' request for a Chapter 10 discharge.  At that time, no court-martial had been convened, no charges against Jenkins had been referred, and no court-martial was pending.

34.     On February 18, 1988, the Army issued Jenkins' Chapter 10 discharge "in lieu of court martial."

35.     Notwithstanding the Judge Advocate General's specific admonition that any rehearing would have to meet speedy trial requirements of 120 days, the Commander of Fort Leavenworth took no action for seven months following remand, until March 9, 1988 – significantly past the December 11, 1987 deadline for action within 120 days of the remand memorandum.

36.     On March 9, 1988, the Commander of Fort Leavenworth issued an order finding that "[a] rehearing . . . is no longer practicable" and "The charges, previously set aside by the United States Army Court of Military Review, are dismissed."

37.     The March 9, 1988 order also stated: "All rights, privileges and property of which the accused has been deprived by virtue of the sentence so set aside will be restored."  This directive had no legal effect and did not restore the rights, privileges and property of which Jenkins had been deprived by his subsequently overturned conviction.

**B.     Failure To Provide Required Legal Advice**

38.     Assigned counsel, who was based several hundred miles from Jenkins, never met with Jenkins in person.

39.     Assigned counsel sent Jenkins a letter on November 30, 1987.  In that letter, assigned counsel "urge[d]" Jenkins to request a Chapter 10 discharge, but failed to provide Jenkins with information that almost certainly would have affected his decision to do so.

40.     Assigned counsel's letter to Jenkins stated:

> I am Captain Gary D. Hyder, Senior Defense Counsel at Fort Leavenworth, Kansas.  Your court-martial has been sent here for a re-hearing.  It is possible that your case may be settled by a Chapter 10 and a dismissal of your charges, [sic] you will also receive much of your back pay as a result of your case being overturned.
>
> I have enclosed a copy of the Chapter 10.  I urge you to sign the Chapter 10.  You will receive, along with the benefits outlined above, no federal conviction.  Further, you will not have to come to Fort Leavenworth in order for this to be processed.
>
> If you should elect to go for the re-hearing you will receive none of the benefits I have outlined above, except that you will receive some of your back pay.  You will be required to come to Fort Leavenworth for your case to be re-tried.

> If you elect to submit the Chapter 10, then please sign above your signature on page 3 of the document.

41.     Assigned counsel's brief letter to Jenkins provided no advice whatsoever on key issues: those relating to the merits of a possible future court-martial.

42.     Assigned counsel's letter failed to address any of the following required topics from Chapter 10:

      a.   The elements of the offense or offenses charged;

      b.   The burden of proof;

      c.   Possible punishments;

      d.   Provisions of Chapter 10;

      e.   Requirements of voluntariness; and

      f.   Rights regarding the withdrawal of the request.

43.     Rather than provide legal advice to Jenkins, assigned counsel enclosed a pre-printed application form for a Chapter 10 administrative discharge and strongly recommended that Jenkins sign and return it.

44.     In failing to provide the information or advice that Army regulations require that he provide, assigned counsel failed in the circumstances of this case to advise his client of the following fundamental considerations:

      a.   Counsel's letter failed to mention that because no evidence against Jenkins was available to the prosecution it would not be able to meet its burden of proof.

      b.   Counsel's letter failed to explain that a rehearing on the charges would within two weeks be legally barred.

  c. Counsel's letter made only a passing reference to the fact that both appellate courts had reversed Jenkins' conviction.

  d. Counsel's letter failed to note that the government's key witness had recanted his allegations against Jenkins.

  e. Counsel's letter failed to explain that all reviewing authorities had expressed doubts about the credibility of the government's witnesses.

  f. Counsel's letter failed to explain that five years had passed since the original court-martial.

  g. Counsel's letter failed to explain that it was exceedingly unlikely that new charges would be preferred against Jenkins.

  h. Counsel's letter failed to explain that Jenkins had already served his sentence of confinement at hard labor and therefore was unlikely to be re-tried, convicted, and sentenced to another period of confinement.

  i. And, Counsel's letter failed to explain that Jenkins would almost certainly be restored to the status he had before charges were brought against him.

  45. Rather than address the issues that Chapter 10 explicitly required, assigned counsel's letter implied that the only way for the case "[to] be settled" was a Chapter 10 discharge, and "urge[d]" Jenkins to sign an enclosed, pre-printed form requesting a Chapter 10 discharge and avoid a trip to Fort Leavenworth "to be re-tried."

  46. In addition, assigned counsel's letter incorrectly advised Jenkins that "[i]f you should elect to go for the re-hearing you will receive none of the benefits" outlined in the letter, "except that you will receive some of your back pay."

47.     Not surprisingly, Jenkins, a man who had enlisted in the Army before graduating high school, followed his attorney's "urg[ing]" and signed the pre-printed form requesting a Chapter 10 discharge.

### C.     The ABCMR's Decision

48.     On March 27, 2015, the ABCMR denied Jenkins' petition for a discharge status upgrade.  It did so without allowing for a hearing on the multiple legal issues raised by this case, contrary to Jenkins' request.

49.     The ABCMR erroneously concluded that charges were still pending against Jenkins when he submitted his application for a Chapter 10 discharge.  The ABCMR stated that "*it appears* the court-martial convening authority subsequently preferred charges against the applicant . . . and *was prepared to conduct a retrial* . . . ."  The ACBMR based these conclusions on the fact that Jenkins signed a pre-printed form which said that the applicant acknowledges that charges have been preferred.  While charges had been preferred more than five years before, there is no evidence in the record that the new convening authority convened a court-martial, referred charges to a court-martial, or had any intention to seek a re-trial, which, had he attempted to do so, would have been legally barred.

50.     With respect to the speedy trial requirements set by the U.S. Court of Military Appeals, articulated in the Manual For Courts-Martial, and re-stated by the Judge Advocate General in remanding the case to the convening authority, the ABCMR concluded that they were not violated on the grounds that "the time from 30 November 1987 when military defense counsel dispatched correspondence to [Jenkins] recommending he submit a chapter 10 until 18 February 1988 when the commencing authority acted on his chapter 10 request was defense delay and thus is not chargeable to the Government for speedy trail [sic] purposes."

13

51.     The ABCMR cited no legal authority – either applicable case law or provisions of the Manual For Courts-Martial – in support of its conclusion.

52.     In its "Discussion and Conclusions," in which the ABCMR otherwise addressed plaintiff's legal arguments, the ABCMR failed to address plaintiff's argument that his assigned counsel violated Army regulations by failing to provide legal advice that Army regulations expressly require be provided prior to submission of an application for a Chapter 10 discharge.

53.     At no point in its decision did the ABCMR address Jenkins' argument that his discharge was issued in violation of Chapter 10 because advice from his assigned counsel was incomplete, inaccurate, and inadequate to meet the express requirements of Chapter 10.

54.     Although the ABCMR briefly noted that Jenkins made this claim, it failed either to discuss the specific issues Chapter 10 requires counsel to address or to assess whether Jenkins' assigned counsel adequately addressed them.   Rather, the ABCMR merely stated that by submitting his request for a Chapter 10 discharge, Jenkins acknowledged that he was sufficiently advised.

54.     The ABCMR noted that its decision "is final" and that Jenkins is "not eligible for further reconsideration of this same matter by this Board."  The ABCMR explained that Jenkins may file suit in a court of appropriate jurisdiction, which Jenkins now does.

## VII.    STATEMENT OF CLAIMS

### Count One – Unlawful Agency Action in Violation of the Administrative Procedure Act

**The ABCMR's Decision Is "Not in Accordance with Law" And Was An Abuse Of Discretion Because The Underlying Chapter 10 Discharge Issued "In Lieu Of Trial By Court-Martial" Was A Legal Nullity Since No Court-Martial Was Pending and None Could Have Been Lawfully Ordered.**

55.     The allegations of the foregoing paragraphs are re-alleged as though set forth here in full.

56.     The APA makes it unlawful for an agency to take action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

57.     The ABCMR's stated mission is to "correct errors in or remove injustices from Army military records."

58.     In reaching its decision, the ABCMR erred as a matter of law.  The ABCMR implicitly acknowledged that Jenkins was not re-tried within the 120-day speedy trial limit that the Judge Advocate General expressly highlighted in his transmittal letter to the convening authority.  The ABCMR concluded, however, that such failure did not violate the speedy trial requirement because "the time from 30 November 1987 when military defense counsel dispatched correspondence to [Jenkins] recommending he submit a chapter 10 until 18 February 1988 when the commencing authority acted on his chapter 10 request was defense delay and thus is not chargeable to the Government for speedy trail [sic] purposes."  The ABCMR cited no legal authority for this proposition.  Indeed, there is none.  Applicable law instead dictates that the speedy trial period had lapsed before Jenkins' Chapter 10 discharge was issued.

59.     The Rule For Courts-Martial 707(c) permits certain delays to be excluded from the 120-day speedy trial period.  Rule 707(c) does not, however, toll the 120-day clock or excuse the prosecution from speedy trial obligations simply because defense counsel *advises* his client to *consider* requesting a Chapter 10 discharge.

60.     Indeed, the Army Court of Military Review has consistently held that not even *filing* a request for Chapter 10 discharge constitutes defense delay that is excluded from the 120-day period, unless the defense expressly requests that the court-martial proceedings be postponed

until the discharge request is considered, or unless the Chapter 10 discharge request otherwise interferes with the normal processing of the case.

61.     Thus, the 120-day period that the Commander of Fort Leavenworth had to convene a rehearing on the charges against Jenkins did not stop when Jenkins' assigned defense counsel advised him to consider applying for a Chapter 10 discharge.  Nor did it stop when Jenkins filed his request for a Chapter 10 discharge, as the record provides no evidence that Jenkins requested that the court-martial proceedings against him – of which none were scheduled – be postponed or that Jenkins' request somehow disrupted or delayed intended court-martial proceedings.  The convening authority was thus barred, as a matter of law, from seeking a re-trial after the 120-day clock expired on December 11, 1987.  That legal bar likewise existed when Jenkins' Chapter 10 discharge request was granted on February 18, 1988.  Jenkins' discharge was consequently not "in lieu of court-martial" as no court-martial of Jenkins could have lawfully been conducted.  The ABCMR's holding to the contrary contradicts applicable law and therefore violates the APA.

**Count Two – Unlawful Agency Action in Violation of the Administrative Procedure Act**

**The ABCMR's Decision Denying Jenkins' Request For A Status Upgrade Was Contrary To Law And An Abuse Of Discretion Because It Did Not Correct The U.S. Army's Failure To Comply With Its Own Regulations Regarding Mandatory Preconditions for Issuing A Chapter 10 Discharge**

62.     The allegations of the foregoing paragraphs are re-alleged as though set forth here in full.

63.     The APA makes it unlawful for an agency to take action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

16

64.     The ABCMR's stated mission is to "correct errors in or remove injustices from Army military records."   Yet, when presented with the facts above, the ABCMR violated law and abused its discretion when it refused to take corrective action.

65.     Chapter 10 requires appointed counsel to provide specific advice, as detailed in paragraph 42 above, prior to an application for as Chapter 10 discharge.

66.     Jenkins was not provided with the legal advice required by Chapter 10, but instead was given legal advice that was incorrect, incomplete, and misleading, inducing Jenkins to apply needlessly for a Chapter 10 administrative discharge.

67.     The failure of assigned counsel to comply with these explicit regulatory requirements was an error of law and a violation of the APA.

68.     The ABCMR's decision denying Jenkins' request for a status upgrade was accordingly contrary to the APA and an abuse of discretion because it upheld a U.S. Army determination that was in violation of its own regulations.

**Count Three – Unlawful Agency Action in Violation of the Administrative Procedure Act**

**The ABCMR's Decision Upholding The Chapter 10 Discharge And Denying Jenkins' Request For A Status Upgrade Was Contrary To Applicable Law Because the Board Based Its Decision On Facts The Record Does Not Support, Committed Legal Error in Excusing the Army's Failure To Meet Applicable Speedy Trial Requirements, And Failed To Address A Potentially Dispositive Legal Argument Made By Jenkins, All In Violation Of The APA.**

69.     The allegations of the foregoing paragraphs are re-alleged as though set forth here in full.

70.     The APA makes it unlawful for an agency to take action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   5 U.S.C. § 706(2)(A).

17

71.     First, the ABCMR's decision is based on a number of points that the record does not support.  These include but at not limited to: that the court-martial convening authority preferred charges against Jenkins prior to his chapter 10 discharge and that the court-martial convening authority was prepared to conduct a retrial on both court-martial charges.

72.     Second, as noted in paragraphs 58-61, the ABCMR's conclusion that that charges against Jenkins were still pending at the time his chapter 10 discharge was granted is erroneous as a matter of law.

73.     The rationalization of the ABCMR that defense counsel's advising his client to consider applying for a chapter 10 administrative discharge constituted defense delay is not supported by Rule 707(c) of the Manual for Courts-Martial, which sets forth specific exceptions to the 120-day requirement.  Not only was there no other "proceeding" that delayed referral (see Rule 707(c)), but neither Jenkins nor his counsel ever requested delay.  Moreover, Jenkins had *not even* submitted an application for administrative discharge prior to the running of the 120-day period.

74.     Third, the ABCMR's decision is arbitrary and capricious because it failed to address a central legal argument, namely, that Jenkins' discharge was issued in violation of Chapter 10 because his Army-assigned defense counsel provided incomplete and inaccurate legal advice that did not satisfy Chapter 10's express requirements.

75.     Because the consequences of a Chapter 10 discharge may affect basic rights, the regulations enumerate precisely what issues must be explained and discussed with the prospective applicant.

76.     Jenkins' assigned defense counsel failed to satisfy these requirements.  Instead, the legal advice he provided misled and severely prejudiced his client.

77.     Because the advice Jenkins received from his assigned counsel prior to signing the discharge request was incomplete, inaccurate, and failed to meet explicit requirements of Chapter 10, Jenkins' discharge was issued in violation of Chapter 10.   Although the ABCMR briefly recited the claim as set forth by Jenkins, it failed either to discuss the specific issues Chapter 10 requires counsel to address or to assess whether Jenkins' assigned counsel adequately addressed them.

78.     The "Discussion and Conclusions" section of the ABCMR's decision – where the ABCMR applied the law on speedy trial requirements to the facts on the record to reach a final, albeit erroneous, decision – did not address this argument at all.

79.     Agency decisions that fail to adequately address arguments presented are arbitrary and capricious. *See*, *e.g.*, *Vince v. Mabus*, 852 F. Supp. 2d 96, 100-01 (D.D.C. 2012) (citing *Fuller v. Winter*, 538 F. Supp. 2d 179, 184, 191-93 (D.D.C. 2008)).

80.     Moreover, rather than assess the November 30, 1987 letter from assigned counsel and the requirements of applicable Army regulations, and then determine whether counsel's advice actually met Chapter 10's specific requirements, the ABCMR merely noted that by signing the pre-printed form requesting a Chapter 10 discharge, Jenkins acknowledged that he was sufficiently advised.

81.     Even if providing a pre-printed form by mail were deemed to be providing legal advice – which it does not – the form Jenkins' assigned counsel provided did not cover the specific issues that Chapter 10 enumerates as required elements of advice, many of which require that they be addressed in the context of the individual case and circumstances.   Indeed, the advice provided by assigned counsel failed to touch on roughly half of those elements, and gave incorrect advice on others.

82.     Because the ABCMR decision was (1) predicated on points that the record did not support, (2) based upon an erroneous understanding and application of the 120-day speedy trial requirements, and (3) failed to adequately address Jenkins' argument, the ABCMR's decision is contrary to applicable law and is arbitrary and capricious, in violation of the APA.

**Count Four – Arbitrary And Capricious Agency Action in Violation of the Administrative Procedure Act**

**The ABCMR's Decision Upholding The Chapter 10 Discharge And Denying Jenkins' Request For A Status Upgrade Is Arbitrary And Capricious And An Abuse of Discretion Under The APA When Considered In Light Of The Totality Of Circumstances Of This Case.**

83.     The allegations of the foregoing paragraphs are re-alleged as though set forth here in full.

84.     The APA makes it unlawful for an agency to take action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   5 U.S.C. § 706(2)(A).

85.     When considering the totality of circumstances in this case, it is clear that the ABCMR's decision to deny Jenkins' request for a status upgrade is arbitrary and capricious and an abuse of its discretion.

86.     The ABCMR's denial of relief to correct clear errors of law and plain injustices is not justified by the fact that Jenkins had previously sought relief pro se from the ABCMR and that this request for relief was thus filed out of time,  particularly in light of the Board's legal authority to grant relief notwithstanding time delays.

87.     In evaluating his claim, we submit that the following facts should be considered:

      i.     The doubtful credibility of the uncorroborated testimony of the two witnesses

          at Jenkins' original trial in light of the undisclosed felony conviction of one of

the witnesses and his post-trial letter recanting his testimony, as well as the testimony of the supervisor of the second witness stating that he would not believe her testimony under oath;

ii. The questions raised at every level of appellate review about the credibility of the witnesses and about Jenkins' guilt;

iii. Decisions by both the Army Court of Military Review and the U.S. Court of Military Appeals setting aside the findings against Jenkins;

iv. The protracted appellate review, which lasted nearly five years;

v. That Jenkins nonetheless served a prison sentence at Ft. Leavenworth for charges that were later set aside in their entirety;

vi. That following final remand, the convening authority disregarded the express admonition of the Judge Advocate General of the Army that any decision to retry Jenkins must be made within 120-day speedy trial limit established by the U.S. Court of Military Appeals;

vii. That assigned defense counsel failed to comply with Army regulations requiring that he fully advise the applicant for a Chapter 10 discharge on a number of potential consequences of a decision to apply for an administrative discharge and, instead, gave incomplete, inaccurate, and misleading legal advice;

viii. That Jenkins would have remained on active duty and retained all of his ongoing benefits and veteran's benefits if he had instead received either accurate and complete legal advice or no legal advice at all;

    ix.    That the convening authority ultimately, and necessarily, dismissed all of the charges against Jenkins;

    x.    That the convening authority's order restoring "all rights, privileges and property of which the accused has been deprived" by virtue of his court-martial had no such effect as none of those rights were restored; and

    xi.    That as a result of the foregoing, Jenkins lost his active duty status, his Army career, benefits he would have enjoyed as a member of the U.S. Army, and veteran's benefits upon leaving the Army, including health benefits, the absence of which have had, and continue to have, severely deleterious effects on Jenkins.

88.    In simple terms, Jenkins was convicted solely on the basis of the testimony of two witnesses whose testimony was contradicted at trial, impeached at trial and thereafter, and, in the case of one of the two witnesses, later expressly recanted in writing.  The record prompted all military and appellate reviewing authorities to express doubts about the credibility of the witnesses and Jenkins' guilt.  Military appellate courts then set aside Jenkins' conviction on both charges, and both charges were ultimately dismissed.  Jenkins nonetheless served a sentence of one year confinement at hard labor for a conviction that was later set aside.  Instead of realizing the benefits of the appellate review process and having his rights restored, Jenkins was induced by his assigned counsel to seek an administrative discharge for the convenience of the service.  The advice provided by assigned defense counsel was in violation of Army regulations, was erroneous and incomplete, and produced a punitive result that would never have happened if Jenkins had received no legal advice at all.  Moreover, the administrative discharge the Army issued was itself in violation of the Army's own regulations and thus a legal nullity.  And, the

Army's final act of formally dismissing all charges and ordering that all rights and privileges of Jenkins be restored did not restore those rights and privileges and had no legal effect.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Hold unlawful and set aside the ABCMR's decision denying Jenkins' petition for a discharge status upgrade as arbitrary, capricious, and unlawful agency action in violation of the APA, 5 U.S.C. § 706(2)(A);

B.     Grant Jenkins' petition to upgrade his other-than-honorable discharge to an honorable discharge, pursuant to 10 U.S.C. § 1552(a);

C.     Reinstate the medical and other benefits to which Jenkins, as a veteran, would have been entitled but for his erroneous and unlawful Chapter 10 discharge;

D.     Award reasonable attorneys' fees and costs, plus interest; and

E.     Award any such other and further relief, including but not limited to such specific remedies, as the Court deems just and proper.

Respectfully submitted,

Date:  August 31, 2015

__/s/ Homer E. Moyer, Jr.___
Homer E. Moyer, Jr. #179150
Brian A. Hill #456086
Miller & Chevalier Chartered
655 Fifteenth Street N.W., Suite 900
Washington D.C. 20005-5701
Phone: (202) 626-6020
Fax: (202) 626-5801
hmoyer@milchev.com
*Attorneys for Plaintiff*