# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGE MELVIN JENKINS,     :
               :
   Plaintiff,        :   Civil Action No.:  15-1413 (RC)
               :
   v.          :   Re Document Nos.:  29, 33, 38
               :
ROBERT M. SPEER,[1] Acting Secretary, :
United States Department of the Army, *et al.*, :
               :
   Defendants.      :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR ORAL ARGUMENT

## I. INTRODUCTION

Plaintiff, George Melvin Jenkins, was administratively discharged from the Army in 1988. Mr. Jenkins later unsuccessfully requested that the Army Board for Correction of Military Records (ABCMR) upgrade the status of his discharge to honorable. Now, Mr. Jenkins seeks review of the ABCMR's decision under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. Both parties move for summary judgment. Because the ABCMR's decision was arbitrary in that it neglected to address evidence presented by Mr. Jenkins, the Court grants in part and denies in part these motions and remands this matter to the ABCMR.

---

[1] Acting Secretary Speer is substituted as a defendant in accordance with Federal Rule of Civil Procedure 25(d).

## II. BACKGROUND

### A. Factual Background

Mr. Jenkins entered into active duty in the Army in 1979, at age 17. 1st Jenkins Decl. ¶ 3, JA[2] 145. From 1981 to 1982, Mr. Jenkins was deployed in Korea. ABCMR Record at 2 (Jun. 14, 2016), JA 9. After serving in Korea, Mr. Jenkins was posted to a base in Fort Irwin, California, for training.

During Mr. Jenkins's service at Fort Irwin, an M-3 submachine gun went missing. General Court-Martial Order No. 3, JA 69. Investigators linked the missing gun to Orlando Crespo, "an Army-Air Force Exchange Service employee who sold retail and snack items." *United States v. Jenkins*, 18 M.J. 583, 584 (A.C.M.R. 1984), JA 72. Mr. Crespo was a civilian, but had previously served in the military. *Id*. When confronted by investigators, Mr. Crespo produced the M-3 and named Mr. Jenkins as the source. *Id.* Mr. Crespo claimed that Mr. Jenkins had traded him the M-3 in exchange for potato chips, soda, and cigarettes. *Id.* Mr. Crespo also claimed that he had mistakenly believed the M-3 was a "grease gun" for lubricating vehicles, rather than a firearm. *Id.*

Mr. Jenkins was charged with two separate offenses—(1) stealing the M-3 and (2) disposing of it in violation of Articles 108 and 121 of the Uniform Code of Military Justice, respectively. General Court-Martial Order No. 3, JA 69. Mr. Jenkins maintained his innocence and was tried by a general court-martial at Fort Hood, Texas. General Court-Martial Order No. 3, JA 69. The prosecution for disposition was "based solely on the testimony of Orlando Crespo." *United States v. Jenkins*, 18 M.J. 583, 584 (A.C.M.R. 1984), JA 72. Apparently crediting Mr.

---

[2] The Court cites to the Joint Appendix (JA) submitted by the parties and available at ECF No. 37-1 using the page numbers indicated at the bottom of the page in the form "JA 1."

Crespo's story, the court-martial convicted Mr. Jenkins on both the charge of larceny and the charge of unlawful disposition. *Id.* at 583; General Court-Martial Order No. 3, JA 69. Mr. Jenkins was sentenced to "confinement at hard labor for two years" and a bad conduct discharge. General Court-Martial Order No. 3, JA 69.

Despite a request by Mr. Jenkins's trial counsel, Mr. Crespo's disciplinary records from his time in the service were not provided to Mr. Jenkins before the trial. *Jenkins*, 18 M.J. at 584, JA 72. The records, received after Mr. Jenkins was convicted, showed that Mr. Crespo had been convicted of disrespect to an officer and several other offenses—including forging his commander's signature (although several of the convictions were later disapproved). *Id.* The United States Army Court of Military Review (ACMR) considered Mr. Jenkins's conviction in light of Mr. Crespo's disciplinary history[3] and ultimately set aside both of Mr. Jenkins's convictions[4] with the instruction that "[a] rehearing on the larceny and wrongful disposition

---

[3] Mr. Jenkins also draws the Court's attention to a letter, purportedly sent by Mr. Crespo, recanting his testimony at Mr. Jenkins's court-martial. *See* Letter from Orlando Crespo (Dec. 15, 1982), JA 134 ("I want to say that what I testified about [Mr.] Jenkins was not the truth. At no time in the desert[ ]did [Mr.] Jenkins or any other soldier never [sic] have anything to do with the sub-machine[ ]gun getting into my truck. . . . I knew Jenkins and blamed him to get myself out of trouble because I was scared of going to jail. After I said that I had to keep saying it at the trial, but I really didn't think that they would believe me enough to do what they did."). The same letter appears in the record in unredacted form at JA 252. After receiving the letter the Army unsuccessfully attempted to reach Mr. Crespo. Statement of Captain McGehee as to Attempts to Contact Mr. Orlando Crespo (Jan. 27, 1983), JA 135. Captain McGehee's statement appears in the record in unredacted form at JA 251.

Despite the Army's failed attempts to verify the letter, it does bear several indicia of authenticity. *See generally* Rebuttal to Post-Trial Review (Feb. 5, 1983), JA 218–19. It does not appear that the ACMR considered the letter in setting aside Mr. Jenkins's convictions. *See generally Jenkins*, 18 M.J. 583.

[4] The ACMR initially set aside only the unlawful disposal conviction. *Jenkins*, 18 M.J. at 585, JA 73. The ACMR reasoned that Mr. Crespo's history "could have been used at trial" and "might have affected the outcome of the trial" because "Crespo's credibility was central to the Government's case concerning the wrongful disposition of the submachine gun." *Id.* That decision of the ACMR was, itself, set aside by the United States Court of Military Appeals to permit the ACMR to reconsider the case in light of new Supreme Court precedent. *See generally*

charges may be ordered." *United States v. Jenkins*, CM 443761 (A.C.M.R. July 31, 1987), JA 76. While his convictions were under review, Mr. Jenkins served some of his sentence of confinement at hard labor[5] and was eventually released and placed on excess leave at his home in Indiana. ABCMR Record at 2–3 (Jun. 14, 2016), JA 9–10.

Mr. Jenkins's convictions were set aside on July 31, 1987. *United States v. Jenkins*, CM 443761 (A.C.M.R. July 31, 1987), JA 76. Shortly after, Mr. Jenkins filed a petition for review with the United States Court of Military Appeals, which was docketed on August 31, 1987. Petition for Grant of Review, JA 194; Docketing Notice, *United States v. Jenkins*, No. 443761 (C.M.A. 1987), JA 193. Mr. Jenkins moved to withdraw the petition shortly after filing it, and the petition was withdrawn on October 9, 1987. Order, *United States v. Jenkins*, No. 443761 (C.M.A. Oct. 9, 1987).

In November of 1987 an Army lawyer—Captain Hyder—sent a letter to Mr. Jenkins at Mr. Jenkins's home in Indiana. Letter from Gary D. Hyder (Nov. 30, 1987), JA 148; 1st Jenkins Decl. ¶ 6, JA 146. The cover letter read, in whole, as follows:

> I am Captain Gary D. Hyder, Senior Defense Counsel at Fort Leavenworth, Kansas. Your court-martial has been sent here for a re-hearing. It is possible that your case may be settled by a Chapter 10 and a dismissal of your charges, you will also receive much of your back pay as a result of your case being overturned.
> I have enclosed a copy of the Chapter 10. I urge you to sign the Chapter 10. You will receive, along with the benefits outlined above, *no* federal conviction. Further, you will not have to come to Fort Leavenworth in order for this to be processed.
> If you should elect to go for the re-hearing you will receive none of the benefits I have outlined above, except that you will receive some of your back pay. You will be required to come to Fort Leavenworth for your case to be re-tried.

---

*United States v. Jenkins*, 23 M.J. 225 (C.M.A. 1986), JA 75. On its reconsideration, the ACMR again set aside Mr. Jenkins's conviction of disposal, and also set aside Mr. Jenkins's conviction of larceny. *See generally United States v. Jenkins*, CM 443761 (A.C.M.R. July 31, 1987), JA 76.

[5] Review by the Army Clemency Board resulted in Mr. Jenkins being released on parole in 1983. Mem. of Daniel W. Carson (June 27, 1983), JA 144.

> If you elect to submit the Chapter 10, then please sign above your
> signature on page 3 of the document. Should you have any questions regarding
> your case, or the Chapter 10, please call me collect at (913) 648-4559/684-4941.

Letter from Gary D. Hyder (Nov. 30, 1987), JA 148. Enclosed with the cover letter was a three-page form used to request a chapter 10 administrative discharge from the Army. A chapter 10 discharge, or discharge "for the good of the service," may be taken by servicemembers facing a court-martial.[6] *See generally*, Army Regulation 635-200, ECF No. 36-1, Ex. B. The chapter 10 discharge form included a variety of acknowledgements to be signed both by the servicemember requesting discharge and their counsel. Complete Chapter 10 Form, ECF No. 29-7, Ex. B.

According to Mr. Jenkins, the cover letter and chapter 10 discharge form constitute the entire universe of advice provided by Mr. Hyder. Mr. Jenkins said that he never met with Mr. Hyder and does not recall talking with him by phone. 1st Jenkins Decl. ¶ 7, JA 146. Mr. Jenkins states that:

> Except for what he said in that letter, Captain Hyder never talked to me
> about what might happen if I did not apply for an administrative discharge. He
> never discussed the court decisions with me or explained what legal errors the
> courts had found in my case. He never suggested that the Clemency Board
> decision or my having already served time at hard labor might make a difference.
> Captain Hyder never told me that there might not be another trial. He did not tell
> me that if a rehearing was not ordered within a couple of weeks of his letter, all
> charges would have to be dismissed. He did not tell me that the witnesses who
> testified at trial might not be available again, and he never told me that the
> prosecution's key witness had sent a letter to the judge saying that he had lied at
> my trial to protect himself.

1st Jenkins Decl. ¶¶ 8–9, JA 146. The Army does not identify any further letters, conversations, or other forms of communication between Captain Hyder and Mr. Jenkins.

---

[6] Subsequent to Mr. Jenkins's discharge, the name of the chapter 10 discharge was changed to "discharge in lieu of a trial by court-martial." *See generally* Updated Army Regulation 635-200, ECF No. 32-1.

Mr. Jenkins signed the third page of the form and returned it to Captain Hyder. On February 18, 1988, Mr. Jenkins was discharged from the Army under chapter 10 under "other than honorable conditions." Mem. from Gerald T. Bartlett, JA 184; Certificate of Release or Discharge from Active Duty, JA 170. After Mr. Jenkins was discharged, the charges against him were dismissed (instead of proceeding to another court-martial) because "a rehearing is no longer practicable." General Court-Martial Order No. 3, JA 183.

In briefing his summary judgment motion, Mr. Jenkins offers a new argument concerning the chapter 10 discharge form. Both parties agree that Mr. Jenkins signed the third page of the form and returned it. Mr. Jenkins now asserts that the form he signed was different than the form included in the record. The form that he claims to have signed included several check-off options for indicating that the applicant had received legal advice from counsel. Incomplete Chapter 10 Form, ECF No. 29-6, Ex. A. According to Mr. Jenkins, he never selected any of the options. 2d Jenkins Decl. ¶¶ 5–6, ECF No. 29-5. The version of the form in the record[7] does not include the check-off lines and simply states that the legal advice has been provided.[8] Complete Chapter 10

_____

[7] The version at ECF No. 29-7, Ex. B, which this Court refers to as the "complete" version, also appears in the administrative record with redactions at JA 149.

[8] Specifically, paragraph three of the incomplete version included three blank lines that the applicant could initial or check off to acknowledge corresponding statements. Incomplete Chapter 10 Form, ECF No. 29-6, Ex. A. The first option indicated that the applicant had consulted with "Military Counsel of my own choice who was reasonably available," and the second option indicated that the applicant had consulted with "Civilian Counsel of my own choice who was reasonably available." Incomplete Chapter 10 Form. The third option indicated that the applicant "ha[d] consulted with counsel for consultation who has fully advised me of the nature of my rights under the Uniform Code of Military Justice, the elements of the offense with which I am charged, any relevant lesser included offense thereto, the facts which much be established by competent evidence beyond a reasonable doubt to sustain a finding of guilty . . . and, of the legal effect and significance of my suspended discharge. Although he has furnished me legal advice, this is my own decision." Incomplete Chapter 10 Form.

The complete version does not include any lines or indicate whether consulting counsel was military or civilian. Complete Chapter 10 Form, ECF No. 29-7, Ex. B. Instead, the complete

Form, ECF No. 29-7, Ex. B. Mr. Jenkins therefore argues that someone else substituted the pages to yield the completed form, which he claims he did not see or sign.[9] 2d Jenkins Decl. ¶¶ 9–10. Mr. Jenkins acknowledges that this argument and the incomplete version of the form have never been placed before the ABCMR. *See* Pl.'s Mem. P. & A. Supp. Mot. Summ. J. (Pl.'s MSJ) at 19–31, ECF No. 29-1.

### B. Procedural Background

Two decades after the events described above, Mr. Jenkins made his first attempt to upgrade his discharge by filing a *pro se* application to the ABCMR. The application was summarily rejected in 2010. Letter from Conrad V. Meyer (Dec. 9, 2010), JA 58; *see also* ABCMR Record (Dec. 7, 2010), JA 59–62. Mr. Jenkins's subsequent request for reconsideration was also rejected. Letter from Conrad V. Meyer (Dec. 6, 2011), JA 64; *see also* ABCMR Record (Dec. 1, 2011), JA 65–67.

In 2014, Mr. Jenkins applied to the ABCMR again, this time with the assistance of counsel. Appl. Corr. Military Record, JA 37; *see also* Mem. Supp. Appl. Upgrade Discharge, JA

---

version includes substantially all of the text from the third option, indicating that the applicant has received legal advice. Complete Chapter 10 Form.

The two versions of the form also differ in that: (1) paragraph six of the incomplete version reads "Statements in my own behalf (are) (are not) submitted," but paragraph six of the complete version reads "Statements in my own behalf (are) (are not) submitted," and (2) the date line at the end of the incomplete version is blank, but it has been stamped with "20 JAN 1988" in the complete version. *Compare* Incomplete Chapter 10 Form, *with* Complete Chapter 10 Form.

[9] This alteration is theoretically possible because the allegedly altered portions of each form occur on pages one and two, but Mr. Jenkins's and Captain Hyder's signatures are on page three. Incomplete Chapter 10 Form; Complete Chapter 10 Form. Page three is identical between the two versions. Incomplete Chapter 10 Form; Complete Chapter 10 Form; *cf.* Pl.'s MSJ at 30, ECF No. 29-1 ("This compels the conclusion that Mr. Jenkins's assigned defense counsel modified the first two pages of the form letter returned to him by Mr. Jenkins to reflect that Mr. Jenkins received the requisite advice from counsel, and re-used Mr. Jenkins's signature page with the modified first two pages."). This substitution might have been possible because Mr. Jenkins's signature and Captain Hyder's signature appear identical in both versions.

40–57. The ABCMR again denied relief. Letter from Gerard Schwartz (Mar. 27, 2015), JA 23;

*see also* ABCMR Record (Mar. 26, 2015), JA 25–35. Mr. Jenkins filed a complaint in this Court

challenging that determination. *See generally* Compl., ECF No. 1. This Court granted the Army's

consent motion for a voluntary remand to the ABCMR. *See generally* Order (Feb. 19, 2016),

ECF No. 21. On remand, the ABCMR was instructed to consider:

> (1) whether Plaintiff received the legal advice specifically required by Army Regulation 635-200, Chapter 10;
> (2) whether Plaintiff's administrative discharge was issued "in lieu of court martial" or whether at the time the administrative discharge was issued, a re-hearing before a court-martial would have been legally barred, and, specifically, whether charges had been referred to a convened court-martial at the time of discharge and if not, whether an administrative discharge <u>in lieu of</u> court-martial was legally permissible[.]

Order (Feb. 19, 2016). The ABCMR again rejected Mr. Jenkins's request. ABCMR Record (Jun.

14, 2016), JA 6–22. Following the most recent rejection, Mr. Jenkins moved for summary

judgment, Pl.'s Mot. Summ. J., ECF No. 29,[10] and the Army filed a cross-motion for summary

judgment, Opp'n Pl.'s Mot. Summ. J. & Cross Mot. Summ. J. (Def.'s MSJ), ECF No. 32.[11]

---

[10] Mr. Jenkins also moved for oral argument. *See generally* Mot. Oral Arg., ECF No. 38. Because oral argument would not assist the Court, the Court denies the motion for oral argument. *See* LCvR 7(f) (stating that "allowance [of oral argument] shall be within the discretion of the Court").
   In addition, Mr. Jenkins initially requested the Court to "find that without the errors described above, Mr. Jenkins would have resumed his career on active duty in the U.S. Army," Pl.'s MSJ at 31, and "[c]ompensate Mr. Jenkins with back pay calculated in accordance with law from the date of his unlawful Chapter 10 discharge," Am. Compl. at 25. The Army interpreted this as a request for back pay under the Little Tucker Act, *see* Def.'s MSJ at 2, 32. However, Mr. Jenkins then repudiated these claims, stating that "Plaintiff's claims for monetary damages in the form of back pay are not before this Court." Pl.'s Reply at 10 n.4, ECF No. 34. The Court therefore does not consider Mr. Jenkins's request for back pay.

[11] The Court cites to the Army's filings, in the docket at ECF No. 32. The Army's motion is docketed at ECF No. 33 without any associated documents.

### III. STANDARD OF REVIEW

The Court reviews the ABCMR's decision as a final agency action under the Administrative Procedure Act (APA), 5 U.S.C. § 706. *See Delta Air Lines, Inc. v. Exp.-Imp. Bank of the U.S.*, 85 F. Supp. 3d 387, 400 (D.D.C. 2015) ("The APA 'sets forth the full extent of judicial authority to review executive agency action for procedural correctness.'" (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009))). When performing such a review, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Albino v. United States*, 78 F. Supp. 3d 148, 163 (D.D.C. 2015) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

The APA permits a district court to set aside an agency action only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This arbitrary and capricious standard is "highly deferential" and "presumes the agency's action to be valid." *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The scope of this review "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983). "[A] reviewing court may not set aside an agency [decision] that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute," so long as the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found

and the choice made.'" *Id.* at 42–43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). A court upholds an agency's decision when it can "reasonably . . . discern[ ]" the agency's path, *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197, even when the agency provides only a "brief statement" explaining "why it chose to do what it did," *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (internal quotation marks omitted); *cf. Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86, (1974) (holding that the district court "is not empowered to substitute its judgment for that of the agency" and "may not supply a reasoned basis for the agency's action that the agency itself has not given"). "Furthermore, a party seeking review of a board decision bears the burden of overcoming 'the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith.'" *Roberts v. Harvey*, 441 F. Supp. 2d 111, 118 (D.D.C. 2006) (quoting *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)). In addition to this presumption that government officials discharge their duties, it is also presumed that governmental records are accurate. *See Latif v. Obama*, 666 F.3d 746, 750 (D.C. Cir. 2011) (reissued Apr. 27, 2012) ("The presumption of regularity—to the extent it is not rebutted— requires a court to treat the Government's record as accurate; it does not compel a determination that the record establishes what it is offered to prove.").

District court review of agency decisions is thus typically narrow and deferential. The ABCMR, as a military board, is further entitled to "an unusually deferential application of the 'arbitrary and capricious' standard." *Kreis v. Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989); *see also Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005). This deference originated because the Secretary of a military department is authorized to correct military records "when [the Secretary] considers it necessary

to correct an error or remove an injustice." *Kreis*, 866 F.2d at 1513 (quoting 10 U.S.C. § 1552(a)(1)). A court will disturb only the military board's "most egregious" decisions. *Id.* at 1514; *see also Hill v. Geren*, 597 F. Supp. 2d 23, 29 (D.D.C. 2009) (holding that a court should only check if the military board "permissibly exercised [its] discretion and made a choice that is supported by at least substantial evidence" rather than whether it was "substantively correct"); *Frizelle*, 111 F.3d at 176 (holding that a military review board decision should be upheld if it "minimally contain[s] a rational connection between the facts found and the choice made" (internal quotation marks and citations omitted)).

However, the ABCMR is not entitled to unlimited deference. Its actions "must be supported by reasoned decisionmaking," *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014) (internal quotation marks omitted), and must respond to the plaintiff's non-frivolous arguments, *Frizelle*, 111 F.3d at 177. At the ABCMR, plaintiffs seeking a correction of military records bear the burden of proof. *See* Army Reg. 15-185 ¶ 2-9, 32 C.F.R. § 581.3(e)(2) ("The ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence."). With this deferential standard in mind, the Court turns to the ABCMR decision at issue here.

## IV. ANALYSIS

Mr. Jenkins argues that the ABCMR erred in determining (1) that he received the legal advice required by the chapter 10 regulations, (2) that his discharge was "in lieu of court-martial," and (3) that he was not entitled to equitable relief. The Court addresses each of these arguments in turn.

## A. Legal Advice

Mr. Jenkins argues that the ABCMR erred in finding that his discharge met chapter 10's procedural requirements for advice of counsel. The Court first addresses these arguments on the record that was available to the ABCMR, and then addresses the new argument based on the additional, incomplete version of the discharge form that Mr. Jenkins advances. The Court concludes that the ABCMR acted arbitrarily in neglecting to consider Mr. Jenkins's declaration as evidence that he did not receive legal advice, but declines to compel the ABCMR to accept Mr. Jenkins's new evidence on remand.

### 1. On the Record Before the ABCMR

In order to "insure that a member will not be coerced into submitting a request for a discharge for the good of the Service" the Army enacted specific regulations setting a floor on the legal advice that members must receive prior to requesting a chapter 10 discharge. *See generally* Army Regulation 635-200, ¶ 10-2, ECF No. 36-1, Ex. B.[12] The member's counsel must:

> advise the member concerning—
> (1) The elements of the offense or offenses charged.
> (2) Burden of proof.
> (3) Possible defenses.
> (4) Possible punishments.
> (5) Provisions of this chapter.
> (6) Requirements of voluntariness.
> (7) Type of discharge normally given under the provisions of this chapter.
> (8) Rights regarding the withdrawal of the member's request.
> (9) Loss of Veterans Administration benefits.
> (10) Prejudice in civilian life because of the characterization of the discharge.

---

[12] The Court cites to the 1982 version of chapter 10 appended to the Army's reply, because that version was in effect at the time of Mr. Jenkins's discharge. It appears substantially similar to the later versions referenced in Mr. Jenkins's briefing and the Joint Appendix. *Compare* Army Regulation 635-200, chapter 10, ECF No. 36-1, Ex. B, *with, e.g.*, Updated Army Regulation 635-200, chapter 10, ECF No. 32-1.

Army Regulation 635-200 ¶ 10-2.[13] In addition, the counsel "*may* advise the member regarding

the merits of this separation action and the offense pending against the member." Army

Regulation 635-200 ¶ 10-2 (emphasis added).

Mr. Jenkins argues that his counsel failed to advise him on the ten mandatory topics.[14]

Pl.'s MSJ at 13–16, ECF No. 29-1. According to Mr. Jenkins, he never received any legal advice

from Captain Hyder beyond the cover letter and chapter 10 discharge form. 1st Jenkins Decl.

¶¶ 7–9, JA 146; *see also* 1st Jenkins Decl. ¶ 7, JA 146 (stating that Mr. Jenkins did not remember

talking to Captain Hyder by phone).

Three pieces of evidence in the record address the advice given to Mr. Jenkins by Captain

Hyder: (1) the chapter 10 discharge form signed by Captain Hyder and Mr. Jenkins, (2) the short

cover letter written by Captain Hyder advising Mr. Jenkins to take a chapter 10 discharge, and (3) Mr.

---

[13] The Army argues that "Plaintiff's contention that consultation [on the ten topics] is *required* in the regulation is incorrect. The regulation only states that the soldier will be 'afforded the opportunity (not less than 72 hours) to consult with a consulting counsel.'" Def.'s MSJ at 20, ECF No. 32 (quoting Army Reg. 635-200 ¶ 3-7h. This is incorrect. Although some of the topics of advice described in the regulations are permissive, the regulation plainly states that "[c]onsulting counsel *will* advise the member concerning [the ten topics]." Army Regulation 635-200 ¶ 10-2 (emphasis added). The ABCMR also treated the ten topics as mandatory. *See* ABCMR Record (Jun. 14, 2016), JA 18 ("Consulting counsel was to advise the Soldier concerning [the ten topics]."); ABCMR Record (Jun. 14, 2016), JA 20 ("Comparing the specified requirements of AR 635-200, chapter 10, to the litany of acknowledgements . . . it is clear that each and every requirement under the provisions of chapter 10 of AR 635-200, was satisfied and fulfilled."). The Court therefore treats the ten topics as mandatory subjects of advice under the chapter 10 regulations.

[14] Mr. Jenkins's reply brief argues in a footnote that Captain Hyder's representation was ineffective. Pl.'s Reply at 5 n.1, ECF No. 34. The Court disregards this argument as undeveloped, although to the extent that any ineffective representation would serve as a factor justifying equitable relief, it is addressed *infra* at Part IV.C. *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the parties. To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (internal quotation marks and citations omitted)).

Jenkins's declaration. The ABCMR relied solely on the chapter 10 discharge form and did not

engage with the cover letter or Mr. Jenkins's declaration at all in the context of the legal advice.

In determining on remand that "[Mr. Jenkins] did in fact receive sufficient legal advice

that is required by the governing regulation for this chapter," the ABCMR relied entirely on the

chapter 10 discharge form. ABCMR Record (Jun. 14, 2016), JA 14, 18–19. As the ABCMR

concluded, "[c]omparing the specified requirements of [the chapter 10 regulations] to the litany

of acknowledgements memorialized by him and his defense counsel, it is clear that each and

every requirement . . . was satisfied and fulfilled. It is equally clear that the applicant was

provided advice, guidance, and counseling in excess of that which was required by the regulation

in effect at the time."[15] ABCMR Record (Jun. 14, 2016), JA 20. Although the ABCMR's

---

[15] Although the ABCMR does not link specific statements from the chapter 10 discharge form to the ten topics, the Court notes that each topic is indeed represented. *Compare generally* Complete Chapter 10 Form, ECF No. 29-7, Ex. B, *with* Army Regulation 635-200 ¶ 10-2, ECF 36-1.

First, counsel must provide advice on "[t]he elements of the offense or offenses charged." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, this matches the statement in the chapter 10 discharge form that Mr. Jenkins understood "the elements of the offense charged," and that appointed counsel had "fully advised [him] of . . . the elements of the offense with which I am charged." ABCMR Record (Jun. 14, 2016), JA 19 (fifth and sixth items).

Second, counsel must provide advice on the "[b]urden of proof." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, the chapter 10 discharge form states that counsel has advised the signatory of "the facts which must be established beyond a reasonable doubt" as well as the signatory's rights under the UCMJ. ABCMR Record (Jun. 14, 2016), JA 19 (sixth and seventh items).

Third, counsel must provide advice on "[p]ossible defenses." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, the chapter 10 discharge form states that the signatory was advised of possible defenses. ABCMR Record (Jun. 14, 2016), JA 19 (eighth item).

Fourth, counsel must provide advice on "[p]ossible punishments." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, the chapter 10 discharge form states that the signatory was advised of the maximum permissible punishment if found guilty. ABCMR Record (Jun. 14, 2016), JA 19 (ninth item). Furthermore, as the ABCMR notes, the portion of the chapter 10 discharge form signed by Captain Hyder stated that he had informed Mr. Jenkins of "the maximum permissible punishment authorized under the Uniform Code of Military Justice." ABCMR Record (Jun. 14, 2016), JA 20.

Fifth, counsel must provide advice on the "[p]rovisions of this chapter." Army Regulation 635-200 ¶ 10-2. This is not a model of clarity, and chapter 10 includes several diverse provisions. *See generally* Army Regulation 635-200, chapter 10. However, as the ABCMR

language is imprecise, the Court notes that the chapter 10 discharge form is only *evidence* tending to show that Captain Hyder provided Mr. Jenkins with advice through some separate, extra-record channel, rather than itself sufficient legal advice.[16]

---

notes, the chapter 10 discharge form includes a statement that the signatory has been "advised of the implications that are attached to [this request]." ABCMR Record (Jun. 14, 2016), JA 19 (fourth item). In addition, as the ABCMR notes, the portion of the chapter 10 discharge form signed by Captain Hyder indicates that he told Mr. Jenkins "of the procedures and rights available to him." ABCMR Record (Jun. 14, 2016), JA 20. Mr. Jenkins does not specifically object to this interpretation of the "provisions of this chapter" language.

Sixth, counsel must provide advice on the "[r]equirements of voluntariness." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, the chapter 10 discharge form states that the signatory is proceeding freely and has not experienced "any coercion whatsoever by any person." ABCMR Record (Jun. 14, 2016), JA 19 (third item). Furthermore, as the ABCMR notes, the portion of the chapter 10 discharge form signed by Captain Hyder stated that Mr. Jenkins had "personally made the choices indicated in the foregoing request for discharge for the good of the service." ABCMR Record (Jun. 14, 2016), JA 20.

Seventh, counsel must provide advice on the "[t]ype of discharge normally given under the provisions of this chapter." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, the chapter 10 discharge form notes that the signatory understood that an other than honorable discharge was possible. ABCMR Record (Jun. 14, 2016), JA 19 (tenth item). In addition, as the ABCMR notes, the portion of the chapter 10 discharge form signed by Captain Hyder stated that he had informed Mr. Jenkins of "the significance of [his] suspended sentence to a bad conduct or a dishonorable discharge" and "of the possible effects of an Under Other Than Honorable Discharge if this request is approved." ABCMR Record (Jun. 14, 2016), JA 20.

Eighth, counsel must provide advice on the "[r]ights regarding the withdrawal of the member's request." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, the chapter 10 discharge form states that the signatory understands that, once submitted, the request could only be withdrawn with the consent of various listed military officials. ABCMR Record (Jun. 14, 2016), JA 19 (sixteenth item).

Ninth, counsel must provide advice on "[l]oss of Veterans Administration benefits." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, the chapter 10 discharge form states that the signatory understood that such a discharge may lead to the loss of veterans' benefits under federal and state law. ABCMR Record (Jun. 14, 2016), JA 19 (twelfth item).

Tenth and finally, counsel must provide advice on "[p]rejudice in civilian life because of the characterization of the discharge." Army Regulation 635-200 ¶ 10-2. As the ABCMR notes, the chapter 10 discharge form notes that the signatory was counseled that substantial prejudice may arise in civilian life based on receiving a less than honorable discharge. ABCMR Record (Jun. 14, 2016), JA 19 (thirteenth item).

[16] Several sections of the chapter 10 discharge form allude to separate legal advice but clearly do not provide it. *See, e.g.*, Complete Chapter 10 Form, ECF No. 29-7 at 1–2 (stating, as relevant to the first chapter 10 topic, that counsel had "fully advised [Mr. Jenkins] of . . . the elements of the offense with which [he was] charged," but not listing the elements); Complete

The ABCMR may have been applying the presumption of regularity to the chapter 10 discharge form to presume that the advice referred to in the form was in fact given. "The presumption of regularity—to the extent it is not rebutted—requires a court to treat the Government's record as accurate; it does not compel a determination that the record establishes what it is offered to prove." *Latif v. Obama*, 666 F.3d 746, 750 (D.C. Cir. 2011) (reissued Apr. 27, 2012). In this case, the presumption therefore supports that both Mr. Jenkins and Captain Hyder signed the chapter 10 discharge form—it does not compel a determination that the advice referred to in the form actually occurred. Therefore, the ABCMR erred to the extent that the ABCMR applied the presumption of regularity to conclude that the advice actually took place. Furthermore, the presumption of regularity is strained when it would require the plaintiff to prove a negative. *See Frizelle*, 111 F.3d at 178 (holding that although the Board is ordinarily "entitled to presume that statements in [a record] are fair and accurate unless an applicant presents specific evidence to rebut that presumption," it was unreasonable to expect a plaintiff who claimed that he was not counseled to produce a counseling-related form that his supervisor allegedly did not prepare).

The ABCMR's decision does not address the significance of Captain Hyder's cover letter to the issue of legal advice at all. ABCMR Record (Jun. 14, 2016), JA 18–20. That letter did not include legal advice on any of the ten mandatory topics. Instead, it focused entirely on the possible advantages of the chapter 10 discharge. Among the advantages it noted were: Mr. Jenkins's case would be "settled," Mr. Jenkins would "receive much of [his] back pay," Mr.

---

Chapter 10 Form at 2 (stating, as relevant to the third chapter 10 topic, that Mr. Jenkins was advised of "the possible defenses which appear to be available at this time," but without describing any defenses); Complete Chapter 10 Form at 2 (stating, as relevant to the fourth chapter 10 topic, that Mr. Jenkins was advised of "the maximum permissible punishment if found guilty," but not naming that punishment).

Jenkins would avoid a federal conviction, and Mr. Jenkins would "not have to come to Fort Leavenworth." Letter from Gary D. Hyder (Nov. 30, 1987), JA 148. The cover letter identified no disadvantages to the chapter 10 discharge. *See generally* Letter from Gary D. Hyder (Nov. 30, 1987), JA 148. The letter also did not discuss any of the weaknesses in the Army's case or the obstacles to re-trying and re-convicting Mr. Jenkins, including the approach of the speedy-trial deadline, the time already served at hard labor by Mr. Jenkins, and the Army's difficulty in locating the key witness (Mr. Crespo). Letter from Gary D. Hyder (Nov. 30, 1987), JA 148. Nor did the letter indicate that Captain Hyder intended to provide Mr. Jenkins with any additional legal advice. Instead, the letter instructed Mr. Jenkins to call Captain Hyder "[s]hould [Mr. Jenkins] have any questions." Letter from Gary D. Hyder (Nov. 30, 1987), JA 148. The letter did not encourage Mr. Jenkins to follow-up, or suggest that Captain Hyder thought follow-up would be helpful.

By discussing the advantages of the chapter 10 discharge, and because Captain Hyder "urge[d]" Mr. Jenkins to take a chapter 10 discharge, the letter provided advice on the *merits* of the separation action. Although "advis[ing] the member regarding the merits of this separation action and the offense pending against the member" is optional under the Army's regulations, Army Regulation 635-200 ¶ 10-2(b)(10), counsel is not licensed to provide incomplete or misleading advice. The cover letter presented several benefits to Mr. Jenkins of the chapter 10 discharge, but failed to explain any disadvantages, including that Mr. Jenkins would lose the opportunity to continue his career in the military. Captain Hyder's one-sided statements appear to have fallen short of the threshold for providing objective advice on the merits of the chapter 10 discharge. *Cf. Padilla v. Kentucky*, 559 U.S. 356, 382 (2010) (Alito, J., concurring) ("Incomplete legal advice may be worse than no advice at all because it may mislead and may

dissuade the client from seeking advice from a more knowledgeable source."). The ABCMR did not address Captain Hyder's advice on the merits of the discharge at all.

Furthermore, applying the presumption of regularity to the cover letter—which the ABCMR did not do because it did not address the cover letter at all—would not provide any additional support for the provision of legal advice. Although the Court presumes that Captain Hyder's record, as it were, is accurate, that does no more here than support the statements made in the cover letter and that Captain Hyder was available for a phone call, should Mr. Jenkins initiate one. The presumption provides no support for matters not referred to in the letter, such as the defenses which Mr. Jenkins could raise to a re-trial.

Finally, the ABCMR nowhere addresses Mr. Jenkins's declaration, which provides evidence—contrary to the implication of the chapter 10 discharge form—that no extra-record advice was provided. Mr. Jenkins stated that he received no substantive legal advice from Captain Hyder other than that reflected in the cover letter.[17] *See* 1st Jenkins Decl. ¶¶ 8–9, JA 146 ("Except for what he said in that letter, Captain Hyder never talked to me about what might happen if I did not apply for an administrative discharge. He never discussed the court decisions with me or explained what legal errors the courts had found in my case. He never suggested that the Clemency Board decision or my having already served time at hard labor might make a difference. . . . Captain Hyder never told me that there might not be another trial. He did not tell me that if a rehearing was not ordered within a couple of weeks of his letter, all charges would

---

[17] Although the Army suggests that Mr. Jenkins does not remember if he received additional advice from Captain Hyder by phone, Def.'s MSJ at 20, ECF No. 32; Def.'s Reply at 4, ECF No. 36, that implication is disingenuous. In fact, Mr. Jenkins is certain in stating that he received no additional substantive legal advice from Captain Hyder. 1st Jenkins Decl. ¶¶ 8–9, JA 146. Mr. Jenkins stated that he did not recall if he had a "brief phone conversation" with Captain Hyder. 1st Jenkins Decl. ¶ 7, JA 146. Thus any uncertainty in Mr. Jenkins mind is only as to whether or not a superficial phone conversation occurred, not the provision of legal advice.

have to be dismissed. He did not tell me that the witnesses who testified at trial might not be available again, and he never told me that the prosecution's key witness had sent a letter to the judge saying that he had lied at my trial to protect himself."). Mr. Jenkins was particularly specific in asserting that Captain Hyder provided him with no information about the possible defenses—as required by the third of the ten mandatory topics. 1st Jenkins Decl. ¶¶ 8–9. In this regard Mr. Jenkins's declaration directly contradicts the implication of the chapter 10 discharge form that he received additional advice from Captain Hyder.[18]

Because the ABCMR did not address Captain Hyder's cover letter or Mr. Jenkins's declaration, its decision was arbitrary. It is well-established that a decision by the ABCMR that fails to address a plaintiff's non-frivolous and material arguments is arbitrary. *See Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)). In *Frizelle*, the D.C. Circuit faulted a military review board's failure to respond to two of the plaintiff's arguments. *Id.* First, the review board "fail[ed] to respond to [the plaintiff's] contention that [a] missed deadline did not occur within the reporting period," and second, the review board provided "no basis" for explaining why it overlooked several of the procedural irregularities the plaintiff identified in his counseling record. *Id.* at 178.

Here, as in *Frizelle*, the ABCMR has not addressed two of Mr. Jenkins's arguments—first, that, contrary to the text of the chapter 10 discharge form, he was never provided any legal advice except for the cursory cover letter written by Captain Hyder; and, second, that the legal

---

[18] The Army does not dispute that this declaration was before the ABCMR on remand. *See* Def.'s Reply at 3–4, ECF No. 36; *see also* ABCMR Record (Mar. 26, 2015), JA 25 (indicating that the ABCMR considered "a statement from [Mr. Jenkins]"); ABCMR Record (Mar. 26, 2015), JA 26 (summarizing one of Mr. Jenkins's arguments as that "assigned counsel . . . failed to discuss the merits of the case or the options available to him, in violation of regulatory requirements"); Mem. Supp. App. Upgrade Discharge, JA 54–55 (Mr. Jenkins's brief before the ABCMR, citing to his declaration).

advice contained in the cover letter was inadequate because it addressed only the advantages of the chapter 10 discharge—in any way.[19] Of course the Court does not venture an opinion as to the appropriate weighting of Mr. Jenkins's declaration, the chapter 10 discharge form, and the cover letter. But the ABCMR must undertake to weigh these three pieces of evidence to determine whether Mr. Jenkins received adequate legal advice under the Army's chapter 10 discharge regulations.[20]

## 2. Extra-Record Evidence

Next, the Court turns to Mr. Jenkins's request that it consider his argument—added after the ABCMR's review—that the chapter 10 discharge form was altered without his knowledge. This argument relies on the new, incomplete version of the chapter 10 discharge form attached to Mr. Jenkins's briefing. Because Mr. Jenkins does not justify considering extra-record evidence or overriding the ABCMR's proceedings, the Court will not now consider the evidence. But given this Court's remand, the ABCMR is free to consider this evidence in the first instance upon remand.

"[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). A district court may consider

---

[19] Mr. Jenkins previously raised the inadequacy of Captain Hyder's legal advice before the ABCMR. *See* Mem. Supp. App. Upgrade Discharge, JA 53–55.

[20] The Court rejects the Army's argument that chapter 10's requirements for legal advice may be lessened by Mr. Jenkins's legal experience as a participant in the initial court-martial proceedings. *See* Def.'s MSJ at 22, ECF No. 32; Def.'s Reply at 5. Not only does this argument not accord with the plain language of chapter 10, but, moreover, the ABCMR did not rely on this argument in its decision.

extra-record evidence,[21] or "evidence outside of or in addition to the administrative record that was not necessarily considered by the agency," only in limited circumstances. *Id.* at 5. The D.C. Circuit has identified eight circumstances[22] in which the extra-record evidence "is necessary to determine whether the agency 'considered all the relevant factors.'" *Amfac Resorts, L.L.C., v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 11 (D.C. Cir. 2001) (quoting *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981)). None of these circumstances is applicable here, and Mr. Jenkins does not advance any argument aimed at any of the eight factors. The Court therefore declines to consider the incomplete chapter 10 discharge form as extra-record evidence.

Moreover, rather than simply seeking to introduce new evidence for an existing argument, Mr. Jenkins seeks to introduce a new argument—that he did not actually acknowledge receiving legal advice because he did not check the appropriate option in the incomplete form. Introducing a new argument on review of the decision of an administrative agency is likewise barred. *See Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir. 2012) ("[S]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that

---

[21] Mr. Jenkins does not attempt to meet the standard to supplement the agency record by arguing that the incomplete form was actually before the ABCMR. *Cf. Pac. Shores Subdiv. Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) ("For a court to supplement the record, the moving party must rebut the presumption of administrative regularity and show that the documents to be included were before the agency decisionmaker."). The Court therefore considers Mr. Jenkins's argument as aimed at introducing extra-record evidence rather than supplementation.

[22] The eight circumstances are: "(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952))). Instead, "issues not raised before an agency are waived and will not be considered by a court on review." *Id.* (quoting *Nuclear Energy Inst. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004) (per curiam)); *see also Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946) ("[A] reviewing court usurps [an] agency's function [if] it sets aside [an] administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.").

In the event that the Court declines to consider the incomplete form, Mr. Jenkins requests that, "if summary judgment for the Plaintiff is not granted on the basis of errors in the administrative record alone," "the case should be remanded to the [ABCMR] with instructions to consider [the incomplete letter]." Pl.'s MSJ at 31, ECF No. 29-1. As discussed previously, the Court will remand the matter to the ABCMR based on the Court's previous conclusion that the ABCMR erred in neglecting to consider Mr. Jenkins's declaration. Mr. Jenkins is free to use the ABCMR's procedures to seek to introduce the incomplete form before it and the ABCMR is free to consider the new evidence in that context.

### B. In Lieu of Court-Martial

Mr. Jenkins argues that the ABCMR erred in finding that his discharge was "in lieu of a trial by court-martial."[23] Mr. Jenkins focuses on two objections: first, that no court-martial was

---

[23] As the Army notes, at the times relevant to this matter, a chapter 10 discharge was referred to as a discharge "for the good of the service" instead of a discharge "in lieu of court-martial." *Compare* Army Regulation 635-200, chapter 10, ECF No. 36-1, Ex. B, *with* Updated Army Regulation 635-200, ECF No. 32-1. However, by either name it was a requirement that the discharge be in lieu of a court-martial. *See* Army Regulation 635-200, ¶ 10-1a ("The discharge

pending at the time of the discharge, and second, that the Army's speedy trial requirements would have barred a renewed court-martial. *See* Pl.'s MSJ at 17–23, ECF No. 29-1. However, the ABCMR's rejection of both of these arguments was neither arbitrary nor capricious.

First, Mr. Jenkins argues that his discharge was not in lieu of a court-martial because no court-martial was pending when he was discharged. The ABCMR disagreed because the charges that had initially been preferred against Mr. Jenkins were not dismissed until after his discharge and "[Mr. Jenkins] and his defense counsel acknowledged the existence, and presumably the legitimacy, of both charges in the [chapter 10 discharge form]." ABCMR Record (Jun. 14, 2016), JA 17. This statement refers to the acknowledgement in the chapter 10 discharge form that "[Mr. Jenkins] understand[s] that [he] may request Discharge for the Good of the Service because of the following charges which have been preferred against [him]" followed by listing the wrongful disposition and larceny charges.[24] Complete Chapter 10 Form, ECF No. 29-7, Ex. B.

Rather than address whether charges had been *preferred* against him, Mr. Jenkins's briefing instead focuses on several other stages of the rehearing process. He argues that there was no rehearing "pending," that a new court-martial had not been "convened," that the charges had not been "referred" to a court-martial, and that other steps prior to convening a court-martial, such as consulting a Staff Judge Advocate, had not been taken. Pl.'s MSJ at 17–19. Mr. Jenkins offers no legal authority that any of these steps are the key element determining the availability

---

request may be submitted after court-martial charges are preferred against the member . . .”). The title is therefore a distinction without a difference.

[24] This issue is not affected by Mr. Jenkins's request to include extra-record evidence because the same language appears in the incomplete version which Mr. Jenkins acknowledges signing. *See* Incomplete Chapter 10 Form, ECF No. 29-6, Ex. A.

of a chapter 10 discharge.[25] Nor does Mr. Jenkins dispute that charges had been preferred, acknowledging that "charges had been preferred 5 ½ years before."[26] Pl.'s MSJ at 19.

Mr. Jenkins neglected to substantially dispute the ABCMR's determination that the preferral of charges, rather than any other procedural step, is the necessary precondition for a chapter 10 discharge. This position is supported by the applicable Army regulations. *See* Def.'s Reply Supp. Cross-Mot. Summ. J. (Def.'s Reply) at 7, ECF No. 36 ("Pursuant to Army regulations, the only requirement that must be present for a soldier to submit a discharge in lieu of court-martial is that charges have been preferred against him . . ." (quoting Army Regulation 635-200 ¶ 10-1a, ECF No. 36-1)). Furthermore, as the Army notes, the fact that Mr. Jenkins's convictions had been set aside did not necessarily require the Army to prefer charges again. Def.'s Reply at 9 ("[I]f the court does 'not dismiss charges in an order or opinion setting aside a conviction, but rather authorize[s] a rehearing on those charges, the original preferral date survives and governs, and there is no need to again "prefer" charges'" (quoting *United States v. McFarlin*, 24 M.J. 631, 634 (A.C.M.R. 1987)). Indeed, in the civilian context, when a conviction is overturned the defendant need not be re-indicted (analogous to preferring charges again) prior

---

[25] Indeed, as the ABCMR concluded, "[w]ith regard to whether these charges were referred to court-martial subsequent to remand, the record is silent on this issue. It is noted, however, that the question of whether the charges were referred to court-martial [is] likely not relevant to the issues the applicant has raised or to the relief he seeks." ABCMR Record (Jun. 14, 2016), JA 18.

[26] Similarly, Mr. Jenkins does not substantially challenge the ABCMR's conclusion that at least one of the charges—either of which would justify a chapter 10 discharge—was preferred against him at the time of his discharge. "The court-martial charge of larceny had not been dismissed and was still pending against the applicant . . . . In addition to the larceny charge, it appears the court-martial convening authority subsequently preferred charges against [Mr. Jenkins] for the wrongful disposition of government property . . . and was prepared to conduct a retrial on both . . . . This is supported by the fact that in the request [Mr. Jenkins] submitted for a chapter 10 discharge, he acknowledged that he understood court-martial charges had been preferred against him for both the wrongful disposition of government property and for larceny." ABCMR Record (Jun. 14, 2016), JA 14; see also Def.'s Reply at 10, ECF No. 36.

to a new trial unless the indictment itself was vacated. *Cf. Price v. Georgia*, 398 U.S. 323, 324 (1970) ("The Court of Appeals of Georgia reversed the conviction because of an erroneous jury instruction and ordered a new trial. On October 20, 1967, petitioner was again placed on trial for murder under the original indictment." (citation omitted)).

The ABCMR's decision to focus on the preferral of charges was reasoned decisionmaking which suffices to justify its decision under this Court's "unusually deferential" application for military boards of the already "highly deferential" standard of review. *See Kreis v. Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989); *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). Beyond his bare arguments, Mr. Jenkins does not dispute that charges had been preferred and offers no legal authority disputing that the preferral of charges is the key element for a chapter 10 discharge. In the absence of any such evidence, this Court cannot disturb the ABCMR's conclusion that, based in part or Mr. Jenkins's acknowledgement in the chapter 10 discharge form, "[t]he preponderance of the evidence shows the charges were, in fact, extant." ABCMR Record (Jun. 14, 2016), JA 15.

Second, Mr. Jenkins argues that his discharge was not in lieu of a court-martial because the Army's speedy-trial requirements would have prevented the Army from holding a second court-martial. The applicable regulations required that a rehearing be held within 120 days. *See McFarlin*, 24 M.J. at 632 ("[W]e hold, for purposes of a rehearing under UCMJ art. 63, 10 U.S.C. § 863 following appellate reversal of the conviction of a non-confined individual, the rehearing must be held within 120 days of the date the convening authority is notified of the final decision authorizing a rehearing.").

The ABCMR considered this argument and rejected it. As an initial matter, the ABCMR notes that the speedy-trial clock is an affirmative defense that a defendant may raise to the

tribunal during the second court-martial, not an automatic expiration date on charges. *See* ABCMR Record (Jun. 14, 2016), JA 15 ("Court-martial charges do not, however, self-terminate upon the passing of 120 calendar days. Instead, an accused who believes his charges should be dismissed for speedy trial reasons must affirmatively make that motion to the military judge.").[27] As the ABCMR noted, Mr. Jenkins did not raise the speedy-trial issue to any tribunal, much less obtain dismissal on those grounds. ABCMR Record (Jun. 14, 2016), JA 16. Because Mr. Jenkins had not yet raised or had the opportunity to raise this affirmative defense, the ABCMR concluded that the charges were still pending and a chapter 10 discharge was available.

Furthermore, the ABCMR notes that fewer than 120 days may have elapsed on the speedy-trial clock when Mr. Jenkins was discharged. ABCMR Record (Jun. 14, 2016), JA 16–17. The ABCMR concluded that the time until Mr. Jenkins withdrew his abortive appeal to the U.S. Court of Military Appeals would likely be excluded, resulting in only 113 elapsed days from October 28, 1987 to the date of Mr. Jenkins's discharge on February 18, 1988. ABCMR Record (Jun. 14, 2016), JA 17. The ABCMR noted that this analysis was by its nature imperfect because "ascertaining whether a speedy trial violation actually occurred" is a "difficult task" and the number of elapsed days that would count for speedy-trial purposes is "unknowable at this late date and is beyond the adjudicative powers of this Board." ABCMR Record (Jun. 14, 2016), JA 17. Determining whether elapsed time counts toward the speedy-trial clock is "fact-intensive inquir[y]" that requires a tribunal to examine each period of delay. ABCMR Record (Jun. 13, 2016), JA 17. The ABCMR thus concluded that Mr. Jenkins had not carried his burden of

---

[27] Although Mr. Jenkins faults the ABCMR for not identifying a regulation stating that "an accused must affirmatively move to dismiss charges when speedy trial requirements are violated," Pl.'s MSJ at 23, ECF No. 29-1, he does not identify any legal authority contrary to the ABCMR's position, and the regulation itself favors the ABCMR's view. *See generally* R.C.M. 707, ECF No. 29-2, Ex. 1.

showing that speedy-trial issues would have prevented a rehearing. Mr. Jenkins's arguments that the ABCMR's calculation is flawed[28] serve primarily to emphasize the difficulties the ABCMR would face in determining if the speedy-trial clock had run.

It was therefore neither arbitrary, capricious, nor unlawful for the ABCMR to conclude that the elapsed time did not bar Mr. Jenkins's chapter 10 discharge on speedy-trial grounds. At most, had Mr. Jenkins been re-tried, he would have been able to argue that speedy-trial reasons militated against the proceedings and the Army would have been able to argue to the contrary. As the Army notes, both sides thus had an incentive to avoid the potential dispute by resolving the charges without a trial, as they did through the chapter 10 proceeding (which is analogous to a plea bargain in a civilian proceeding). Def.'s Reply at 11. A court "will not disturb the decision of an agency that has 'examine[d] the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *MD Pharm. v. Drug Enf't Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The ABCMR's decision here meets this standard. The ABCMR considered the facts and concluded that, because the charges were never dismissed on speedy-trial grounds, the elapsed time posed no obstacle to Mr.

---

[28] Specifically, Mr. Jenkins objects that the speedy-trial clock should have run during the weeks prior to Mr. Jenkins noticing his short-lived petition, Pl.'s Reply at 9 n.2, ECF No. 34, and that the speedy-trial clock also should have run during his petition because no court ever stayed the proceedings, Pl.'s MSJ at 21.

Mr. Jenkins presents no legal authority on either point, and the complications Mr. Jenkins identify emphasize the difficult task confronting the ABCMR. Neither argument suffices to overcome "the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith." *Roberts v. Harvey*, 441 F. Supp. 2d 111, 118 (D.D.C. 2006) (quoting *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)). The Court therefore declines to disturb the ABCMR's conclusion that it cannot currently determine that the speedy-trial clock would have been violated and that Mr. Jenkins has thus failed to meet his burden of showing an entitlement to relief.

Jenkins's discharge. The ABCMR further concluded that, even if it did consider the elapsed time, Mr. Jenkins could not meet his burden of showing that more than 120 days had elapsed for speedy-trial purposes. Because the ABCMR's conclusion was rationally connected to the facts it considered, this Court will not disturb the ABCMR's conclusion that charges against Mr. Jenkins were properly pending under chapter 10.

### C. Equitable Relief

Mr. Jenkins argues that the ABCMR's denial of equitable relief was arbitrary, capricious, or otherwise unlawful. Pl.'s MSJ at 26–27, ECF No. 29-1. Mr. Jenkins identifies several factors that he argues justify equitable relief, including the weakness of the Army's original case against him, the limited nature of advice provided to him by Captain Hyder, Mr. Jenkins's time served at hard labor before his convictions were set aside, and the lifelong consequences of his other than honorable discharge. Pl.'s MSJ at 26–27; *see also* Pl.'s MSJ at 32 (listing factors allegedly justifying equitable relief). The ABCMR considered and rejected the possibility of equitable relief on remand. ABCMR Record (Jun. 14, 2016), JA 21. As a part of that analysis, the ABCMR considered Captain Hyder's allegedly insufficient representation as a possible basis for equitable relief, but concluded that his representation was not ineffective when considered in the context of the challenges of the representation and the goal of avoiding exposing Mr. Jenkins to a second court-martial that, if successful, would leave Mr. Jenkins with a federal conviction. ABCMR Record (Jun. 14, 2016), JA 21. The ABCMR ultimately concluded that Mr. Jenkins's other than honorable discharge was accomplished in accordance with the applicable regulations. ABCMR Record (Jun. 14, 2016), JA 22.

The ABCMR's choice of whether to grant equitable relief enjoys the same unusually deferential review as its other conclusions. "[I]f the record contains such evidence that a

reasonable mind might accept as adequate to support a conclusion, the court must accept the Board's findings." *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996). Here, the record contains sufficient evidence that a reasonable mind could accept as adequate to support the ABCMR's conclusion that equitable relief was not warranted. Mr. Jenkins does not identify any arguments that the ABCMR ignored in deciding against granting equitable relief. The ABCMR specifically considered the factors that Mr. Jenkins argues support equitable relief, for example, the time served at hard labor and the limitations of Captain Hyder's representation. *See* Pl.'s MSJ at 27. On balance, and after considering countervailing factors such as Captain Hyder's overall "commendable" representation, the ABCMR decided that equitable relief was not warranted. ABCMR Record (Jun. 14, 2016), JA 21. The ABCMR has clearly "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983) (internal quotation marks and citations omitted). In its deferential review the Court does not disturb the ABCMR's weighing of the factors. The Court thus denies Mr. Jenkins's challenge to the ABCMR's decision on equitable relief because the ABCMR's decision was not arbitrary, capricious, or otherwise unlawful.

### D. Remedy

The Court thus concludes that the ABCMR acted arbitrarily in determining that Mr. Jenkins received adequate legal advice without considering Mr. Jenkins's declaration or Captain Hyder's cover letter. As a remedy, Mr. Jenkins requests that the Court "[g]rant [his] petition to upgrade his other-than-honorable discharge to an honorable discharge."[29] Am. Compl. at 25,

---

[29] Mr. Jenkins also seeks access to veterans' benefits in accordance with honorable discharge status and other remedies as the Court finds proper. Am. Compl. at 25.

ECF No. 26. Mr. Jenkins argues that another remand would create a delay during which he would continue to be unable to access benefits. Pl.'s MSJ at 31, ECF No. 29-1.

However, remand is the typical remedy when a district court determines that a military review board neglected to address an argument. *See, e.g.*, *Pettiford v. Sec'y of Navy*, 774 F. Supp. 2d 173, 185 (D.D.C. 2011) ("The [board's] failure to address plaintiff's argument renders its decision arbitrary. Accordingly, the Court will remand this matter to the [board] for further consideration."); *Hill v. Geren*, 597 F. Supp. 2d 23, 34 (D.D.C. 2009) (holding that "a remand is appropriate so that the Board may decide the issue for itself" despite the plaintiff's request for immediate injunctive relief); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005) ("Accordingly, because it appears that this argument may have been raised at the agency level and the argument is not frivolous on its face, the ABCMR's failure to address it was arbitrary and this case must be remanded to the Secretary of the Army to review this argument in the first instance."); *Allen v. Card*, 799 F. Supp. 158, 166 (D.D.C. 1992) (remanding to the board despite plaintiffs' arguments that the board had previously delayed appropriate relief).

Mr. Jenkins argues that remand to the ABCMR will create delay. A remand will inevitably create some amount of delay, and the Court acknowledges that 29 years have passed since Mr. Jenkins's discharge. Furthermore, the ABCMR has already considered Mr. Jenkins's case on four occasions. *See* ABCMR Record (Dec. 7, 2010), JA 59–62 (Mr. Jenkins's *pro se* application); ABCMR Record (Dec. 1, 2011), JA 65–67 (reconsideration of Mr. Jenkins's *pro se* application); ABCMR Record (Mar. 26, 2015), JA 25–35 (Mr. Jenkins's application with counsel); ABCMR Record (Jun. 14, 2016), JA 6–22 (voluntary remand of Mr. Jenkins's application with counsel). However, the responsibility for the passage of time does not rest solely on the ABCMR's shoulders. For much of that time period Mr. Jenkins had not yet challenged his

discharge, and his initial arguments to the ABCMR were not refined or articulated by counsel. In the absence of any particular prejudice identified by Mr. Jenkins, remand is still appropriate to permit the ABCMR to consider his declaration in the first instance.

The Court will thus remand the case to the ABCMR for a limited purpose. On remand, the ABCMR must "grapple" with Mr. Jenkins's declaration and Captain Hyder's cover letter in the context of the legal advice provided to Mr. Jenkins. *Cf. Roberts v. Harvey*, 441 F. Supp. 2d 111, 122 (D.D.C. 2006) (remanding because the ABCMR "failed to grapple with what appears to be a substantial issue"). Furthermore, the ABCMR "must expressly indicate that it has done so. Otherwise, . . . this court would [not] be able to discern whether the [ABCMR] considered and was unpersuaded by those factors or whether the [ABCMR] simply excluded them from its decisionmaking process. Moreover, if the [ABCMR] excludes those factors from consideration, it must explain its rationale for doing so." *Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 853 (D.C. Cir. 1993).

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 29) is **GRANTED IN PART AND DENIED IN PART**, Defendants' Motion for Summary Judgment (ECF No. 33) is **GRANTED IN PART AND DENIED IN PART,** and Plaintiff's Motion for Oral Argument (ECF No. 38) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 29, 2017                                RUDOLPH CONTRERAS
                                                              United States District Judge